UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KATHLEEN W. GILBREATH** | * | **CIVIL ACTION NO. 09-1922** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **AVERITT EXPRESS, INC., ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a motion to remand [doc. # 2] filed by plaintiff Kathleen W. Gilbreath. Removing defendant opposes the motion. For reasons stated below, it is recommended that the motion to remand be denied; that judgment be entered in favor of defendant, Roger Whitlock, dismissing with prejudice plaintiff's claims against said defendant; and that judgment be entered in favor of cross-defendant, Averitt Express, Inc., and against cross-claimant, Roger Whitlock, dismissing the cross-claim, without prejudice.

## BACKGROUND

During the relevant period, Kathleen Gilbreath was employed as a truck driver by Laser Spot, Inc. to ferry large trailers loaded with paper products around the Graphic Packaging Inc. facility located in West Monroe, Louisiana. (Petition, ¶ 4). On September 1, 2008, Gilbreath was so employed, hauling a trailer owned by Averitt Express Inc., when the trailer suddenly collapsed in the middle and arrested the rig's forward progress. *Id*. As a result, Gilbreath's body was violently "jerked" around the cab, causing "severe and permanent injuries." *Id*.

Accordingly, on August 27, 2009, Gilbreath filed the instant suit for damages in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana against Averitt Express, Inc. ("Averitt") and Roger Whitlock, an employee of Graphic Packaging, Inc. ("Graphic Packaging") who was purportedly charged with ensuring the safety of the Averitt Express trailers. (Petition, ¶¶ 5-7). Gilbreath contends that the accident and her resulting damages were solely and proximately caused by defendants' negligence. *Id*. Gilbreath seeks to recover the usual litany of damages, including past, present, and future: medical expenses, physical pain and suffering, mental anguish, emotional distress, and lost wages; diminished earning capacity; special care and services; loss of enjoyment of life; and permanent disability. *Id*., ¶ 9.

On November 13, 2009, Averitt removed this suit to federal court on the sole basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). Averitt is a citizen of Tennessee. *Id*., ¶ 9. Plaintiff is a citizen of Louisiana, as is defendant, Whitlock. (Petition, Preamble, ¶ 1). To circumvent the apparent lack of diversity between the parties, removing defendant contends that plaintiff has no reasonable possibility of recovery against Whitlock, and that he was improperly joined in an effort to defeat removal. (Notice of Removal, ¶¶ 15-16). Plaintiff disagrees with defendant's assessment of her claims against Whitlock, and on November 19, 2009, filed the instant motion to remand because of incomplete diversity, i.e. lack of subject matter jurisdiction, and because removal was procedurally time-barred by 28 U.S.C. § 1446(b).

On November 24, 2009, the undersigned issued an order notifying the parties that if the court found that plaintiff had no reasonable possibility of recovery against the non-diverse defendant, then summary judgment would be recommended *sua sponte* in favor of said defendant. (Nov. 24, 2009, Order [doc. # 5]). The parties were invited to file any additional

2

briefs and/or competent summary judgment evidence addressing the relevant issue(s). *Id*. Following an extension of time for the parties to conduct jurisdictional discovery,[1] the matter is now before the court.

## LAW AND ANALYSIS

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id*. The removal statutes are strictly construed in favor of remand. *Id*.

### I.   Subject Matter Jurisdiction

Defendant Averitt invoked this court's subject matter jurisdiction via diversity, which requires an amount in controversy greater than $75,000, and complete diversity of citizenship between plaintiff and defendants, 28 U.S.C. § 1332(a). Plaintiff does not contest that the amount in controversy exceeded $75,000 at the time of removal. In fact, plaintiff contends that it was apparent from the face of the petition that the amount in controversy exceeded $75,000. *See* discussion, *infra*. Although the parties cannot confer federal subject matter jurisdiction via consent,[2] the record establishes that the amount in controversy exceeded $75,000 at the time of

---

[1] Dec. 1, 2009, Minutes of Proceedings [doc. # 9].

[2] *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104 (1982).

removal.³  Thus, the sole jurisdictional issue is whether the parties are completely diverse.

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants.  28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5ᵗʰ Cir. 1990).  To circumvent the lack of diversity between plaintiff and defendant, Roger Whitlock, removing defendant invokes the improper joinder doctrine.  The improper joinder doctrine affords a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'"  *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir.2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5ᵗʰ Cir. 2005)).  To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McDonal, supra* (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003).

In the case *sub judice*, there are no allegations of actual fraud.  Accordingly, the court must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the non-diverse defendant, *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against him.  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc).  The court may resolve this issue in one of two ways:  1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the non-diverse defendant under state law (Fed.R.Civ.P. 12(b)(6)

---

³ In her October 19, 2009, responses to discovery, plaintiff denied that her claim for damages was less than $75,001.00.  (Pl. Ans. to Req. for Admiss. No. 10; Notice of Removal, Exh. C).  Post-removal discovery responses suffice to establish amount in controversy.  *Cook v. Wasbash Nat. Trailer Centers, Inc.*, 2003 WL 21488125 (E. D. La. June 20, 2003) (citation omitted).

analysis);[4] or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, *supra*. However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.*[5] In the process, the court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis*, *supra*. Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete and remand is required. *Id.*

    a)     **Corporate Officer or Employee Liability**

Louisiana law provides that in limited circumstances a corporate officer or employee may be held individually liable for injuries to third persons. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994) (citing, *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973)). The liability may be imposed on such individuals even if the duty breached arises solely from the employment relationship. *Ford*, 32 F.2d at 936. Liability may be imposed on a manager under the following conditions:

1. The principal or employer owes a duty of care to the third person . . . . breach of which has caused the damage for which recovery is sought.

---

[4] To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations [in the plaintiff's petition] must be enough to raise a right to relief above the speculative level," which means that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

[5] In other words, facts that can be easily disproved if not true. *Id.*

2. The duty is delegated by the principal or employer to the defendant.

3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm.

*Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994) (citing, *Canter*, 283 So.2d at 721).

It is manifest that,

a premises owner has a duty of exercising reasonable care for the safety of persons on its premises and a duty of not exposing such persons to unreasonable risks of injury or harm. This duty extends to employees of independent contractors for whose benefit the owner must take reasonable steps to ensure a safe working environment.

*Thomas v. A.P. Green Industries, Inc.*, 933 So.2d 843, 852 (La. App. 4th Cir. 2006) (citations and internal footnotes omitted).

Moreover, an employee may be held individually liable by a third person for breach of a duty that arises out of the employment or agency relationship between the employee and her employer.

*Canter*, 283 So.2d at 722-723.

  b)  **Evidence & Analysis**

  Plaintiff alleges that Roger Whitlock

> was employed by Graphic Packaging, Inc., and was charged with the duty of inspecting the Averitt Express trailers to be sure said trailers were safe, structurally secure, properly loaded and able to carry the loads which were placed in them by defendant Whitlock, his co-employees, and his employer, Graphic Packaging.

(Petition, ¶ 7). Plaintiff further alleges that Whitlock failed to inspect the Averitt trailer to ensure that it was structurally sound and that he failed to safely load and secure the trailer with paper products. *Id.*, ¶ 5(B).

  On December 21, 2009, the parties took Roger Whitlock's deposition. *See* Whitlock Depo., Def. Opp. Memo., Exh. D. In his deposition, Whitlock testified that during the relevant period, he served as Superintendent of Shipping at Graphic Packing, Inc., and supervised approximately 70 subordinates. *Id.*, pgs. 8-9. Whitlock no longer physically loads trailers; rather, the trailers are loaded by lift truck operators, who are supervised by a crew leader. *Id.*, pgs. 9-10. Although the trailers are inspected by the guards at the gate and the Laser Spot drivers, the best inspection is conducted by the lift truck operator when he goes into the truck. *Id.*, pgs. 28-29. Indeed, an experienced truck driver would be able to discern any structural deficiencies with the trailer. *See* Whitlock Depo., pg. 29. Whitlock testified that when the trailer broke in two, it was "out and away from [his] control." *Id.*, pg. 49. He does not personally inspect the trailers, nor did he inspect or view the trailer at issue in this case. *Id.*, pgs. 86, 98. Whitlock also did not personally load the subject trailer, and was not even aware that it was at the

facility. *Id*. Finally, Whitlock did not supervise the loading or inspection of the subject trailer. *Id*., pg. 99.

In sum, the evidence uniformly establishes that Roger Whitlock was neither personally aware of, nor personally involved in the circumstances that led to the instant accident. Whitlock's testimony further indicates that he delegated to his subordinates any general responsibility for the safety of the trailers. There are no allegations or evidence to suggest that this delegation was made without due care. *See, Pisciotta v. Allstate Ins. Co.*, 385 So.2d 1176, 1185 (La. 1979) (responsibility for safety delegated to others, with no showing that the delegation was without due care); *Esco v. Smith*, 468 So.2d 1169, 1175 (La. 1985) (duty of care delegated to others; no showing that the delegation was effected without due care). Moreover, there are no allegations or evidence that Whitlock knew, or should have known that any responsible subordinates were either not-performing or mal-performing their assigned duties. *See Canter, supra*; *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312-313 (5th Cir. 2005) (no evidence that supervisor failed to delegate his responsibility with due care or that the non-diverse defendants were aware of the alleged unreasonably dangerous condition).

Accordingly, the undersigned finds that plaintiff has no reasonable possibility of recovery against Whitlock, and that his presence must be disregarded for purposes of diversity. Under these circumstances, it is appropriate to enter summary judgment in favor of said defendant, dismissing with prejudice plaintiff's claims against him. *Carriere, supra*. The remaining parties (plaintiff and Averitt) are completely diverse. The court may properly exercise subject matter

jurisdiction. 28 U.S.C. § 1332.[6]

The undersigned further observes that, prior to removal, Whitlock answered the petition and filed a cross-claim against Averitt. (Answer and Cross-Claim [doc. # 1-8]). In his pleading, Whitlock sought dismissal of plaintiff's suit or *alternatively*, judgment against Averitt for the costs of judgment, expenses, and fees incurred by Whitlock. *Id*., Prayer. Having recommended dismissal of plaintiff's claims against Whitlock, his alternative request for relief against Averitt Express, Inc. is moot, and therefore, subject to dismissal.

## II.     Timeliness of Removal

The removal process is fraught with procedural pitfalls for the unwary defendant including, but not limited to, the temporal filing limitations at issue here. Under the removal statutes, a defendant must file a notice of removal: 1) within 30 days after the defendant receives, through service or otherwise, a copy of the initial pleading or summons; or 2) if the case "stated by the initial pleading is not removable," within 30 days from defendant's receipt "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . ." 28 U.S.C. § 1446(b) (commonly referred to as first and second paragraphs of § 1446(b)).

Plaintiff contends that service of her petition triggered the 30 day removal period under the first paragraph of § 1446(b). If substantiated, this error, timely raised, would constitute a

---

[6] As plaintiff noted, Averitt alleged in its answer the comparative fault of other parties and non-parties for improperly loading the trailer. (Ans., ¶ 10 [doc. # 1-8]). Averitt's answer, however, preceded the jurisdictional discovery conducted by the parties. Nonetheless, in the absence of a Rule 54(b) judgment dismissing Whitlock, the parties should tread warily going forward, lest they inadvertently resurrect a claim against Whitlock, and thereby undermine this court's jurisdiction. *See e.g., McKee v. Kansas City Southern Ry. Co.*, 358 F.3d 329 (5th Cir. 2004).

9

procedural defect in the removal process, compelling remand. *See, In re Shell Oil Co.*, 932 F.2d 1518, 1522 (5th Cir. 1991) (failure to timely remove under § 1446(b) is a procedural defect in removal process).

### a) Removal Under the First Paragraph of § 1446(b)

In *Chapman v. Powermatic, Inc.*, the Fifth Circuit held that the 30 day removal period under the first paragraph of § 1446(b) is triggered "only when the [initial] pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992).[7] The court added that it intended to adopt a "bright line rule requiring the plaintiff, if [s]he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." *Id*. The court intended the "bright line" rule to obviate the need for protective removals, and to relieve the district courts from having to expend finite resources attempting to divine what defendants knew or should have known had they exercised due diligence. *Id*.; *see also*, *Freeman v. Witco, Corp.*, 984 F.Supp. 443, 447-448 (E.D. La.1997); and *Lucas v. Lowe's Home Center, Inc.*, 2005 WL 3543144 (E.D. La. 2005).

Ten years on, the Fifth Circuit in *Bosky v. Kroger Texas, LP*, recited the *Chapman* bright line rule, but then remarked that the court had "since held that specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage

---

[7] The court specifically disagreed with a district court opinion which held that the defendant failed to timely remove a case where the defendant had previously received plaintiff's medical bills and records which revealed sums owed in excess of the minimum jurisdictional amount. *See Chapman, supra* (citing *Mielke v. Allstate Ins. Co.*, 472 F.Supp. 851 (E. D. Mich. 1979)).

10

claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002) (citing *Marcel v. Pool Co.*, 5 F.3d 81, 82-85 (5th Cir.1993) and *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408-12 (5th Cir.1995)).[8]

Thus, under *Chapman* and *Bosky*, the 30 day removal period contained in the first paragraph of § 1446(b) is triggered only when the initial pleading includes, 1) a specific allegation that damages are in excess of the federal jurisdictional amount; or 2) specific damage estimates that are less than the minimum jurisdictional amount, but when combined with other unspecified damage claims, provide sufficient notice that an action is removable. *Chapman, supra* and *Bosky, supra*. Moreover, a defendant's "subjective knowledge cannot convert a case into a removable action." *Bosky*, 288 F.3d at 210 (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72

---

[8] However, both cases cited by *Bosky* to support the purported retreat from *Chapman*, focused upon whether the amount in controversy exceeded the jurisdictional minimum for purposes of subject matter jurisdiction – not the timeliness of removal. *See, Marcel, supra* and *De Aguilar, supra*. Moreover, *Bosky* acknowledged that removal under the first paragraph of § 1446(b) was not at issue in that case. *Bosky*, 288 at 209-210. Accordingly, *Bosky's* modification of *Chapman* is technically dicta.

The difficulty with the case law, as implicitly recognized by *Bosky*, and by plaintiff in her brief herein, is that *Chapman*'s "bright line" pleading requirement is appreciably more restrictive than the preponderance of the evidence standard employed by other Fifth Circuit decisions to determine amount in controversy for purposes of diversity jurisdiction. *See e.g., DeAguilar, supra*. The *Bosky* court apparently tried to bridge the gap between the two tests – at least for removals perfected under the first paragraph of § 1446(b). *Bosky, supra*. However, *Bosky* then proceeded to create an even higher standard to start the removal clock under the second paragraph of § 1446(b), while paying lip service to the preponderance of evidence standard. *Id.*; *see* discussion, *infra*.

One consequence of this dichotomy is that a defendant may be able to establish by a preponderance of the evidence that the amount in controversy exceeds the requisite jurisdictional minimum even though § 1446(b)'s 30 day removal periods have not been triggered under *Chapman* or *Bosky*.

11


F.3d 489, 494 (5th Cir.1996)); *but cf Wise v. Bayer*, 281 F.Supp. 2d 878 (W.D. La. 2003).[9]

Here, plaintiff's petition contains neither an allegation that her damages exceed the federal jurisdictional minimum, nor any specific damages estimates.[10] Accordingly, the petition did not trigger the 30 day removal period under the first paragraph of § 1446(b).[11]

---

[9] In *Wise v. Bayer*, the court found that defendants failed to timely effect removal where, *inter alia*, defendants admitted that they knew that the potential value of the case exceeded the jurisdictional minimum at the time that the initial pleading was filed. *Wise, supra*. In so holding, the court stated that it was joining other district courts in declining to convert the *Chapman* "bright line" rule into a "head in the sand rule." *Id*. (citation omitted). The court reasoned that under the "bright line" rule, plaintiffs could thwart removal by simply declining to admit that their damages exceeded $ 75,000 until the one year removal bar had lapsed. *Wise, supra* (citing 28 U.S.C. § 1446(b)). However, this concern is ameliorated by the Fifth Circuit's willingness to permit an equitable extension to the one year limit if a plaintiff attempts to manipulate the statutory rules for determining federal removal jurisdiction. *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003). Moreover, in *Chapman*, the court found that the 30 day removal period had not been triggered, despite defendant's concession that it "knew that the amount in controversy exceeded the $ 50,000 minimum jurisdictional limit of the federal court when it received the initial pleading." *Chapman*, 969 F.2d at 162 n.4. To the extent that *Wise* and *Chapman* remain in tension, the undersigned is compelled to defer to the latter decision.

[10] Louisiana Code of Civil Procedure Article 893 states that, "[n]o specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand." La. Civ. Code Art. 893(A)(1).

[11] It is important to note that *Chapman* recognized that a defendant could still remove a case to federal court even if the initial pleading did not reveal on its face that plaintiff was seeking damages beyond the jurisdictional minimum. *Chapman*, 969 F.2d at 163 n.6. Under this permissible removal, *Chapman* said that the court may either: "(1) look to the petition for removal, (2) make an independent appraisal of the amount of the claim, or suggest that the defendant is free to do so, or (3) remand the action." *Id*. (citations omitted). These options are analogous to the procedure adopted by the Fifth Circuit to determine amount in controversy for purposes of diversity jurisdiction when the plaintiff's petition does not allege a specific amount of damages. Under this permissive removal, the defendant must prove the requisite amount in controversy by a preponderance of the evidence. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).
    Although not at issue here, some injuries and damages alleged in a petition (e.g. death, paraplegia, etc.) may be so severe that, even though the petition does not include a "bright line" jurisdictional allegation, a defendant may be remiss for failing to promptly effect removal.

  **b)**   **"Other Paper" Removal**

  In *Bosky v. Kroger Texas, LP*, the Fifth Circuit established a "bright line" rule for the 30 day removal period under the second paragraph of § 1446(b):

> the information supporting removal in a copy of an amended pleading, motion, order or other paper must be "unequivocally clear and certain" to start the time limit running for a notice of removal under the second paragraph of section 1446(b). This clearer threshold promotes judicial economy. It should reduce "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.

*Bosky*, 288 F.3d at 211 (footnote omitted). This begs the question what must be included in an "other paper" to make it "unequivocally clear and certain" that the amount in controversy exceeds the jurisdictional threshold?

  Despite some equivocation, *Bosky* managed to provide some guidance. The court explained that its removal standard did not conflict with other cases such as *Gebbia v. Wal-Mart Stores, Inc.*,[12] *Luckett v. Delta Airlines, Inc.*,[13] and *Marcel v. Pool Co.*,[14] because those cases were not relevant to removals effected under the second paragraph of § 1446(b). *Bosky*, 288 F.3d at 212, n.20 (citations omitted). *Bosky* then cited other Fifth Circuit cases such as *S.W.S. Erectors, Inc. v. Infax, Inc.*, and *Wilson v. Belin*, that it deemed to be consistent with its "unequivocally clear and certain" standard. *Bosky, supra* (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489,

---

[12] 233 F.3d 880, 882-883 (5th Cir. 2000).

[13] 171 F.3d 295, 298 (5th Cir. 1999).

[14] 5 F.3d 81, 82-85 (5th Cir.1993).

491-92 (5th Cir. 1996); *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir.1994)).[15] In both *S.W.S. Erectors* and *Wilson*, defendants' removal was premised upon written evidence obtained from plaintiffs which acknowledged *specific damage figures* that exceeded the federal jurisdictional minimum. *Id*.

Although not discussed in *Bosky* itself, it is instructive that the "other paper[s]" that defendants relied upon to remove the case were documents that revealed actual medical expenses in excess of $75,000. *Bosky v. Kroger*, Appellee Brief, 2001 WL 34127780. Even more telling is that, more than 30 days before removal, the defendant obtained discovery from plaintiff stating that she would "not seek more than $500,000.00 for all of her damages and may seek less than this amount . . .," and a written statement that plaintiff's medical damages were around $50,000. *Id*. *Bosky* effectively held that the foregoing evidence was insufficient to commence the 30 day removal period. Rather, the 30 day removal clock was not triggered until defendant obtained written proof of actual damages that exceeded the jurisdictional minimum.

With this backdrop, it is manifest that the 30 day removal clock under the second paragraph of § 1446(b) was not triggered herein until after October 19, 2009, when removing defendant received discovery responses from plaintiff confirming that her damages were greater than the jurisdictional minimum. *See* Pl. Ans. to Req. for Admiss. No. 10, Notice of Removal, Exh. C; *Chapman*, 969 F.2d at 164 (a written discovery response constitutes an "other paper"). Defendant timely removed this matter within 30 days thereafter. 28 U.S.C. § 1446(b).

---

[15] *Bosky* also cited *Marcel v. Pool*. This citation to *Marcel* is curious however, because two footnotes earlier, *Bosky* cited *Marcel* as a case that was not relevant to removal under the second paragraph of § 1446(b).

**III.     Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that the motion to remand and associated request for costs and fees [doc. # 2], filed by plaintiff Kathleen W. Gilbreath be **DENIED**.

**IT IS FURTHER RECOMMENDED** that judgment be entered in favor of defendant Roger Whitlock, and against plaintiff Kathleen W. Gilbreath, dismissing with prejudice plaintiff's claims against said defendant only.

**IT IS FURTHER RECOMMENDED** that judgment be entered in favor of cross-defendant, Averitt Express, Inc., and against cross-claimant, Roger Whitlock, dismissing the cross-claim, without prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 9th day of March 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE