UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| KATHLEEN W. GILBREATH | CIVIL ACTION NO. 09-1922 |
|---|---|
| VERSUS | JUDGE ROBERT G. JAMES |
| AVERITT EXPRESS, INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 28] filed by

Defendant Averitt Express, Inc. ("Averitt").[1]  For the following reasons, Defendant's Motion for

Summary Judgment is DENIED.

I.      INTRODUCTION

This case arises out of Plaintiff Kathleen W. Gilbreath's ("Gilbreath") work as a truck driver

for Laser Spot, Inc.  On September 1, 2008, Gilbreath alleges that she was assigned to move a loaded

trailer manufactured by Averitt using a "spotter" truck.  [Doc. No. 1-1, p. 1].  Gilbreath alleges that

while she was moving the trailer, it collapsed in the middle, bringing the spotter truck to a sudden

stop, which jerked Gilbreath's body and caused her "severe and permanent injuries, as well as

resulting pain and discomfort."  *Id.* at pp. 1-2.

Prior to her accident, Gilbreath had filed for Chapter 13 bankruptcy and her plan had been

confirmed by the bankruptcy court on March 14, 2005.  On the date of her accident, however,

---

[1] The Court entered judgment in favor of Defendant Roger Whitlock and Averitt, in its
capacity as a Cross-Defendant, on April 21, 2010.  [Doc. No. 13].  On August 19, 2010,
Gilbreath filed a Second Amended and Supplemental Complaint, naming Graphic Packaging
International, Inc. ("Graphic Packaging"), as an additional Defendant.  [Doc. No. 26]. Therefore,
Averitt and Graphic Packaging are the remaining Defendants in this matter.

Gilbreath was still making payments on her plan.  She was not discharged from bankruptcy until

almost two years later on May 3, 2010.  [Doc. No. 28-1, p. 4].  Gilbreath did not disclose her injuries

or potential cause of action to the bankruptcy court.  [*See* Doc. No. 36, p. 1].

On August 27, 2009, Gilbreath filed a Petition for Damages in the Fourth Judicial District

Court for the State of Louisiana, alleging that Averitt caused her injuries.  [Doc. No. 1-1, pp. 1-2].

On November 13, 2009, Averitt removed the lawsuit to this Court on the basis of diversity

jurisdiction.  [Doc. No. 1].

On August 24, 2010, Averitt filed a Motion for Summary Judgment.  [Doc. No. 28].  Averitt

argues that, under the United States Bankruptcy Code, Gilbreath had a continuous and ongoing duty

to report any causes of action that accrued before her Chapter 13 bankruptcy proceeding was

discharged.  Because Gilbreath failed to disclose her cause of action against Averitt to the bankruptcy

court, Averitt contends that Gilbreath's claim should be barred by the doctrine of judicial estoppel.

However, as Averitt concedes, if Gilbreath's failure to disclose was inadvertent, then judicial

estoppel does not apply.  Averitt maintains that Gilbreath's failure to disclose was not inadvertent

because (i) Gilbreath knew the factual basis of her claim while her Chapter 13 plan was still in effect

and (ii) Gilbreath had a motive for failing to disclose the claim to the bankruptcy court, i.e., the

amount of debt discharged might have decreased in light of her claim.

On September 14, 2010, Gilbreath filed an Opposition to Motion for Summary Judgment.

[Doc. No. 36].  Gilbreath contends that, while debtors have a duty to disclose their assets under

Chapter 13 of the Bankruptcy Code, debtors are not required to disclose assets acquired after their

Chapter 13 plan has been confirmed by the bankruptcy court.  Since her cause of action against

Averitt arose more than three years after the confirmation of her Chapter 13 plan, Gilbreath argues

that she had no duty to disclose the asset to the bankruptcy court and, therefore, the doctrine of judicial estoppel does not apply.

In the alternative, Gilbreath argues that judicial estoppel applies only where a plaintiff has intentionally misled the bankruptcy court.  Gilbreath maintains that she failed to disclose her cause of action inadvertently because she was not aware of the duty to disclose.

Finally, Gilbreath also argues that she should not be judicially estopped from asserting her claim because Gilbreath's bankruptcy trustee has signed an affidavit stating that any disclosure by Gilbreath would not have affected the terms of her Chapter 13 plan.[2]  As judicial estoppel is an equitable doctrine, she contends that its application in these circumstances would be inequitable.

On August 24, 2010, Averitt filed a Reply Memorandum to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  [Doc. No. 37].  Averitt pointed to *Woodard v. Taco Bueno Restaurants, Inc.*, No. 4:05-CV-804-Y, 2006 WL 3542693 (N.D. Tex. Dec. 8, 2006), an unpublished decision that explores, in great detail, the difficulties courts have had in determining whether debtors operating under a confirmed Chapter 13 plan have an obligation to disclose causes of action that accrue post-confirmation and, if so, whether the doctrine of judicial estoppel should bar debtors from bringing such previously undisclosed claims.  Relying on *Woodard*, Averitt argues that Gilbreath had a duty under the Bankruptcy Code to disclose her cause of action, even though it arose post-confirmation.  Further, Averitt contends, since *Woodard* issued in 2006 and a

---

[2] To the extent Gilbreath makes the argument that because she had a private agreement with her ex-husband that he would make the bankruptcy payments, she had no duty to disclose her cause of action to the bankruptcy court, the Court is not persuaded.  Gilbreath cites no statute or case law supporting this contention, and, as she remained a co-debtor under the Chapter 13 plan, any private arrangements she entered into are irrelevant.  Further, the Court notes that it is unclear whether Gilbreath's agreement is legally enforceable.

bankruptcy court and district court within the Fifth Circuit have cited its reasoning favorably, "it is not unreasonable to conclude that the plaintiff, or her bankruptcy attorney, should have been aware of the continuing duty to disclose." [Doc. No. 37, p. 6]. Thus, Averitt concludes that judicial estoppel is appropriate.

This matter is now ripe for ruling.

## II.     LAW AND ANALYSIS

### A.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the

evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

>     **B.     Judicial Estoppel**

In this matter, there are no genuine issues of material fact. The parties agree on the material facts, and Averitt seeks summary judgment based on a pure question of law.

Because the issue underlying judicial estoppel in this matter is an interpretation of the federal Bankruptcy Code, the Court applies federal law. *See Woodard*, 2006 WL 3542693, at *3 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). Under federal law, "[j]udicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *In re Coastal Plains*, 179 F.3d at 205 (quoting *Brandon v. Interfist Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). "The purpose of the doctrine is 'to protect the integrity of the judicial process', by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.'" *Id.* (quoting *Brandon*, 858 F.2d at 268) (modification in original). "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks and citation omitted).

"A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (citing *In re Coastal Plains*, 179 F.3d at 206-07). "Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that

undisclosed asset." *Id.*

### 1.    Whether Gilbreath made an inconsistent representation

The first prong of judicial estoppel is that the party must be asserting a position to the Court that is inconsistent with her prior legal position.  The Court finds that Gilbreath is asserting a position in this Court that is inconsistent with her position to the bankruptcy court.

### a.    Gilbreath's duty to disclose her cause of action

The threshold question in this matter is whether Gilbreath had a duty to disclose her cause of action against Averitt to the bankruptcy court.  If Gilbreath's duty to disclose assets ended with the confirmation of her Chapter 13 plan, then the first prong of judicial estoppel is not met, as Gilbreath's legal position in this Court is not inconsistent with her legal position in the bankruptcy court.  However, this Court has recently held that "bankruptcy debtors have an ongoing duty to amend their schedule of assets in bankruptcy proceedings, including those acquired after a bankruptcy court has confirmed a bankruptcy plan." *Henry v. Kansas City Southern Railway Co.*, No. 10-CV-0469, 2010 WL 3613795, at *4 (W.D. La. Sept. 8, 2010).  While the Court finds no reason to set aside its previous conclusion, the Court will expand upon its previous analysis to address specific arguments raised by the parties.

"[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *In re Coastal Plains*, 179 F.3d at 207-08 (citing 11 U.S.C. § 521 ("The debtor shall-(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs . . . .")).  "'*Any claim with potential must be disclosed*, even if it is contingent, dependent, or conditional.'" *Id*. at 208 (quoting *Westland*

*Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 103 (S.D. Tex. 1993)). Thus, it is well-established law that a debtor has a duty to disclose property and assets, which include potential causes of action, to the bankruptcy court.  *See* 11 U.S.C. § 541; *In re Coastal Plains*, 179 F.3d at 208; *Woodard*, 2006 WL 3542693, at *5.

Although the parties agree that a debtor must disclose a potential cause of action prior to confirmation of his bankruptcy plan, they disagree whether a debtor must continue to make disclosures after confirmation.  This disputed issue likely stems from "facially inconsistent sections of the bankruptcy code: 11 U.S.C. §§ 1306 and 1327."  *Woodard*, 2006 WL 3542693, at *4.

Section 1306 states that the bankruptcy estate includes property "that the debtor acquires after the commencement of the case but before the case is *closed, dismissed, or converted*."  11 U.S.C. § 1306(a)(1) (emphasis added).  However, Section 1327 provides, "Except as otherwise provided in the plan or the order confirming the plan, *the confirmation of a plan* vests all of the property of the estate in the debtor . . . free and clear of any claim or interest of any creditor provided for by the plan."  11 U.S.C. § 1327(b)-(c) (emphasis added).  Thus, while Section 1306 indicates that the bankruptcy estate continues to accrue assets after confirmation of a debtor's Chapter 13 plan, a plausible reading of Section 1327 is that any property a debtor acquires post-confirmation is owned free and clear by the debtor and excluded from the bankruptcy estate.  *See Woodard*, 2006 WL 3542693, at *5.

Although the Fifth Circuit Court of Appeals has not addressed this particular issue, other courts have adopted different interpretive approaches.  *See id.* at *5-6 (describing the first four approaches and advancing a fifth option).  The first approach, called the estate-termination approach, finds that the bankruptcy estate ceases to exist after the debtor's plan is confirmed.  *Id.* at *5.  Under

this approach, the debtor has no duty to disclose property acquired post-confirmation.  However, this interpretation is plainly inconsistent with the language of Section 1306, which establishes that property acquired by the debtor is part of the bankruptcy estate until the case is closed, dismissed, or converted.  *See id.*; *Barbosa v. Solomon*, 235 F.3d 31, 36 (1st Cir. 2000).

The second approach, called the estate-preservation approach, finds that "all property of the estate remains property of the estate after confirmation until discharge, dismissal, or conversion." *Woodard*, 2006 WL 3542693, at *6.  The Eighth Circuit has substantially adopted this approach, finding that the bankruptcy estate continues to exist "even if property of the estate vests in the debtor at confirmation," noting that, while Section 1327 may vest property in the debtor, the bankruptcy estate does not cede all legal rights to the property.  *Security Bank v. Neiman*, 1 F.3d 687, 690 (8th Cir. 1993).  The Eighth Circuit observes, for example, that the bankruptcy estate's trustee continues to administer the estate after confirmation.  *Id.* at 690-91.  Thus, under the estate-preservation model, confirmation is not a meaningful event, and the debtor's duty to disclose newly acquired property continues despite the confirmation of his plan.  *Woodard*, 2006 WL 3542693, at *6.  This approach, however, renders Section 1327's command that property "vests" in the debtor upon confirmation meaningless, making "vests" merely about possession, instead of its ordinary meaning that legal rights attach.  *See id.*; *see also Neiman*, 1 F.3d at 690 ("[E]ven if property of the estate vests in the debtor at confirmation, that does not necessarily mean that the estate no longer exists.  The estate can continue to exist as a legal entity after confirmation even if it holds no property.").

The third approach, called the middle-of-the-road approach, which has been adopted by the Seventh and Eleventh Circuits, attempts to "split[] the baby."  *Woodard*, 2006 WL 3542693, at *6. Under this approach, "while the filing of the petition for bankruptcy places all the property of the

debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000) (quoting *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997)). However, this approach contradicts Section 1306, which states that *all* property acquired before discharge, dismissal, or conversion is a part of the bankruptcy estate, not just the property needed to fulfill the confirmed plan. *Woodard*, 2006 WL 3542693, at *6. This interpretation also ignores Section 1327, which provides that *all* property vests in the debtor upon confirmation, not merely the property unnecessary to the fulfillment of the plan. *See id.*

The fourth approach, adopted by the First Circuit in *Barbosa v. Solomon*, finds that all of the bankruptcy estate's property "vests in the debtor free of any claims from the creditors" at confirmation but concludes that the bankruptcy estate "continues to be funded by the Debtors' regular income and post-petition assets as specified in section 1306(a)." 235 F.3d 31, 36-37 (1st Cir. 2000). In *Barbosa*, the court found that the debtor's real property vested in him at confirmation. The property subsequently appreciated in value, and the debtor made a large profit when he sold it. *Id.* at 33. The court held that the debtor's plan could be modified to reflect the profits from the sale. *Id.* at 41. However, this approach is flawed because it "hold[s] anomalously that a debtor must fund claims against the [bankruptcy] estate with assets that are vested in him free and clear of any claims." *Woodard*, 2006 WL 3542693, at *6.

The fifth approach, advanced by the court in *Woodard*, rests its analysis on a broader consideration of Chapter 13's scheme and a new interpretation of "vests," as used in Section 1327. This interpretation allows Sections 1306 and 1327 to co-exist without undermining the meaning of either provision. *Id.* at *9.

In framing its approach, the *Woodard* court observes that, "unlike other chapters of the code, chapter 13 does not require a debtor to liquidate most of his assets." *Id.* at *8.  Chapter 13 thereby allows the debtor to possess property in the bankruptcy estate while fulfilling his plan and to retain the property after successfully completing his plan.  *Id.*  Further, the court states that Section 541 creates a bankruptcy estate at the initiation of Chapter 13 proceedings, "and section 1306 furthers its scheme and logic by requiring any newly acquired assets to be included."  *Id.*

Regarding Section 1327, the court explains its interpretation of the phrase, "the confirmation of a plan vests all of the property of the estate in the debtor."  The court explains that "vest" is not defined by the Bankruptcy Code.  *Id.*  Thus, the court must interpret "vest" using its ordinary meaning.  *Id.* at *9.  An ordinary meaning of "vest" is that a person is given "a legally fixed immediate right of present **or future enjoyment**."  *Id.* (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTONARY 1312 (1991) (emphasis added)).  Read in light of broader Chapter 13 goals, Section 1327 properly means that, upon confirmation, "the debtor is given an immediate and fixed right to the future enjoyment of the bankruptcy estate," but this future enjoyment occurs only after the debtor "has faithfully completed his obligations under the plan and is entitled to discharge."  *Id.* at *9.

The *Woodard* court finds that this interpretation best promotes the goals of Chapter 13 and best harmonizes Section 1306 and Section 1327, and this Court agrees.  *Id.*  The prevailing goal of Chapter 13 bankruptcy is to give debtors "a fresh start in life by furnishing a way to obtain relief from their debts."  *Id.* at *9 (quoting *In re Arnold*, 869 F.2d 240, 242 (4th Cir. 1989) (internal quotation marks omitted)).  This fresh start, however, is contingent upon the debtor's successful fulfillment of his bankruptcy plan.  *Id.*  Thus, at confirmation, a future right to hold property free and

clear is vested in the debtor.  *Id.*

Although Chapter 13 works to the advantage of debtors, "Congress also intended that 'the debtor repay his creditors to the extent of his capability during the chapter 13 period.'"  *Id.* at *10 (quoting *In re Arnold*, 869 F.2d at 242).  Indeed, Chapter 13 provides that a debtor's plan can be modified at any time before the debtor's completion of payments.  *Id.* at *10; 11 U.S.C. § 1329.  In light of this provision, "Certainly Congress did not intend for debtors who experience substantially improved financial conditions after confirmation to avoid paying more to their creditors." *Woodard*, 2006 WL 3542693, at *10 (quoting *In re Arnold*, 869 F.2d at 242) (internal quotation marks omitted).  The *Woodard* court sums up the scheme of Chapter 13 as follows:

> [I]f there is going to be an increase in the debtor's obligation to pay under the plan because his ability to pay has increased, then those assets that the debtor acquired after confirmation must be included in the bankruptcy estate because if they are not, then the allowed creditors under the plan have no claim upon them.  It's a legitimate *quid pro quo*: in exchange for a debtor's receiving complete forgiveness for his debts and the right to keep his assets (versus having them liquidated), the debtor has a continuing obligation to be truthful and forthcoming about all of his assets—from commencement to discharge—so that the bankruptcy court, the trustee, and the allowed creditors can track any change in the debtor's ability to pay his debts. . . . The creditors must be able to rely on the financial disclosures of a debtor when making decisions throughout the bankruptcy, including whether to object to the confirmed plan or to seek a modification. That ability is impaired when disclosure by the debtor is incomplete, untruthful, or less than forthcoming.

*Id.*

Based on the foregoing analysis, the Court affirms its previous holding that "bankruptcy debtors have an ongoing duty to amend their schedule of assets in bankruptcy proceedings, including those acquired after a bankruptcy court has confirmed a bankruptcy plan." *Henry*, 2010 WL 3613795, at *4.  Because Gilbreath had a duty to disclose her claim and failed to do so, it appears that her position advanced in this court is inconsistent with her position in the bankruptcy court.

However, Gilbreath makes the alternative argument that her positions are not inconsistent because her bankruptcy trustee has averred that he would not have modified her plan prior to discharge, even if she had disclosed her cause of action.  The Court is not persuaded.  The duty to disclose all assets exists despite the fact that there may be no adverse consequences to the debtor. As Averitt points out, judicial estoppel protects the integrity of the courts.  By not disclosing her cause of action to the bankruptcy court, Gilbreath undermined the judicial process.  Moreover, under 11 U.S.C. § 1329, creditors themselves, not just trustees, may seek modification of a debtor's plan after confirmation.

The first prong of judicial estoppel is met.

### 2.    Whether Gilbreath convinced the bankruptcy court to accept her prior position

The second prong of judicial estoppel is that "the party against which estoppel is sought convinced a court to accept the prior position." *Jethroe*, 412 F.3d at 600 (citing *In re Coastal Plains*, 179 F.3d at 206-07).  Gilbreath's cause of action arose on September 1, 2008.  Gilbreath was discharged from bankruptcy on May 3, 2010.  In the intervening twenty months, Gilbreath did not make the bankruptcy court aware of her cause of action.  Had Gilbreath disclosed her cause of action, notification would have been made to her creditors, and her confirmed plan could have been modified under 11 U.S.C. § 1329.  By failing to disclose her claim, Gilbreath convinced the bankruptcy court to accept her prior position: that she had no cause of action.  Thus, the second prong of judicial estoppel is also met.

### 3.    Whether Gilbreath acted inadvertently

The third prong of judicial estoppel is that "the party did not act inadvertently." *Jethroe*, 412

F.3d at 600 (citing *In re Coastal Plains*, 179 F.3d at 206-07). Gilbreath contends that she failed to disclose her cause of action inadvertently because she was not aware of a legal duty to disclose the asset and, therefore, "did not knowingly or intentionally fail to list her cause of action as an asset in her bankruptcy petition." [Doc. No. 36-1, p. 1]. Further, Gilbreath submits that "[j]udicial estoppel should be reserved for those cases where the plaintiff made a knowing, willing and purposeful attempt to mislead the Bankruptcy Court and to take advantage of her creditors." *Id.*

Gilbreath's proposed rule is not the standard used by the Fifth Circuit. According to the Fifth Circuit, a failure to disclose is inadvertent "only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *In re Coastal Plains*, 179 F.3d at 210. In order for the debtor to lack knowledge of the undisclosed claim, the debtor must have been unaware of the facts giving rise to his claim when he represented that he had no potential claim to the bankruptcy court. Merely demonstrating that he was unaware of the legal duty to disclose is not enough. *Jethroe*, 412 F.3d at 600. Thus, because Gilbreath was admittedly aware of the facts giving rise to her claim while her bankruptcy was ongoing, she had the requisite knowledge for the third prong of judicial estoppel.

Further, Gilbreath had some motive to conceal the cause of action. Averitt notes, and Gilbreath does not dispute, that Gilbreath "paid $30,160.01 of the community debt during the bankruptcy period. Yet, almost that same amount, $28,706.92, was discharged without payment." [Doc. Nos. 28-1, p. 6 & 28-4, pp. 6, 8]. Gilbreath's total claim for damages in this case is at least $75,001. [*See* Doc. No. 28-4, p. 10]. If Gilbreath had disclosed her claim, her plan could have been modified under 11 U.S.C. § 1329, on motion of the trustee or her creditors. Thus, because Gilbreath was aware of the facts giving rise to her claim and had a motive to conceal her claim from the

bankruptcy court, her nondisclosure was not inadvertent, and the third prong of judicial estoppel is

met.

### 4.     Judicial estoppel as an equitable doctrine

As the Supreme Court has said, "[J]udicial estoppel is an equitable doctrine invoked by a

court at its discretion." *New Hampshire v. Maine*, 532 U.S. at 750.  Even if the elements of judicial

estoppel are satisfied by a particular set of facts, application of the doctrine is not compulsory.

Moreover, the Fifth Circuit has recently said that whether to apply the doctrine "appears to lie in a

holistic, fact-specific consideration of each claim of judicial estoppel that arises from litigation

claims undisclosed to the bankruptcy court." *Reed v. City of Arlington*, ___ F.3d ___, 2010 WL

3585375, at *3 (5th Cir. Sept. 16, 2010).

The case before this Court is different than Fifth Circuit cases judicially estopping a

plaintiff's claim.  *See, e.g.*, *In re Superior Crewboats, Inc.*, 374 F.3d 330, 333 (5th Cir. 2004)

(judicially estopping debtors because they inaccurately reported that their claims were time-barred

when converting to Chapter 7); *Kane v. National Union Fire Insurance Co.*, 535 F.3d 380, 385, 387

(5th Cir. 2008) (declining to apply estoppel in a Chapter 7 case because the debtors' creditors would

be harmed by estoppel more than the debtors); *Reed*, 2010 WL 3585375, at *3 (judicially estopping

a Chapter 7 bankruptcy trustee where the debtor did not disclose a more than $1 million judgment

because the trustee's claim depended on the underlying validity of the debtor's claim).[3]

---

[3] *In re Coastal Plains*, 179 F.3d at 203, is also distinguishable from the case before the
Court.  There, Wayne Duke ("Duke"), the CEO of the debtor company, Coastal Plains, did not
disclose $10 million in claims when the company's Chapter 11 bankruptcy schedule was made.
After a foreclosure auction, Industrial Clearinghouse, Inc. ("IC"), a new company formed by
Duke, purchased assets from a successful bidder at the auction, which "expressly included the
previously undisclosed 'potential cause of action.'"  *Id.*  The bankruptcy was later converted to a

First, while the duty to disclose was clear in the Chapter 7 cases discussed above, there is considerable debate over whether Chapter 13 debtors must disclose assets acquired post-confirmation. The *Woodard* court declined to apply estoppel primarily on this ground. 2006 WL 3542693, at *11. Although like the *Woodard* court, this Court believes that debtors have an ongoing duty to amend their filings until discharge, dismissal, or conversion, the facial statutory conflict present in Chapter 13 has not been resolved by the Fifth Circuit, and other courts have varied in their conclusions.

Second, the facts in this case are less egregious than those in the Fifth Circuit cases cited above.[4] While the debtors' causes of action all accrued before filing for bankruptcy in those cases, Gilbreath's cause of action arose more than three years after her bankruptcy plan was confirmed. In the cases cited above, the debtors made affirmatively false statements in their bankruptcy filings. Here, Gilbreath failed to amend her schedule of assets, which was initially accurate. Although bad faith is not an element of judicial estoppel, the doctrine is ultimately an equitable one, and Gilbreath's lack of bad faith weighs in her favor as a matter of equity.

Finally, the current case involves Chapter 13 bankruptcy. Whereas Chapter 7 debtors are

---

Chapter 7, and the Fifth Circuit found that both IC and the bankruptcy trustee were estopped from pursuing all but one of the claims, which was time-barred.

[4] This Court recently applied judicial estoppel in a Chapter 13 case to dismiss a plaintiff's claims. *Henry*, 2010 WL 3613795, at *5. In *Henry*, although the plaintiff conceded that he was required to disclose his post-confirmation cause of action and his plan was open and amendable, he failed to amend his bankruptcy filings prior to the Court's dismissal of his claims. Further, the *Henry* plaintiff did not provide evidence that his trustee would not seek to modify his bankruptcy plan. Judicial estoppel is an equitable, fact-specific doctrine, and the Court believes the facts of the current case are more sympathetic than the facts in *Henry*.

15

succeeded in interest by their bankruptcy trustees and likely cede any recovery to creditors, Gilbreath could have faced, if anything, the eventual possibility of discharging less debt. *Compare* 3 COLLIER BANKRUPTCY MANUAL ¶ 704.03 (LexisNexis 2010) (causes of action pass to the trustee in Chapter 7), *with Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir. 1998) (the Chapter 13 debtor is the "true representative[] of the estate" (quoting *In re Freeman*, 72 B.R. 850, 854 (Bankr. E.D. Va. 1987))). As a purely equitable consideration, it bears noting that Gilbreath's trustee would not have sought to modify her plan even if she had disclosed her claim. Although her creditors were entitled to seek modification under 11 U.S.C. § 1329, it is unclear whether they would have or whether her plan would have been modified based on the possibility that she might recover a future judgment.

Balancing all of the equities, this Court does not believe that Gilbreath should be estopped from pursuing her claims.

## III.    CONCLUSION

For the foregoing reasons, Averitt's Motion for Summary Judgment [Doc. No. 28] is DENIED.

MONROE, LOUISIANA, this 3rd day of November, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE